**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MIDDLETOWN TOWNSHIP

Plaintiff,

v.

TEVA PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; JOHNSON &
JOHNSON; JANSSEN
PHARMACEUTICALS, INC.;
NORAMCO, INC.; ORTHO-McNEIL-
JANSSEN PHARMACEUTICALS, INC.
n/k/a JANSSEN PHARMACEUTICALS,
INC.; JANSSEN PHARMACEUTICA,
INC. n/k/a JANSSEN
PHARMACEUTICALS, INC.; ENDO
HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC.;
McKESSON CORPORATION;
CARDINAL HEALTH, INC.;
ALLERGAN PLC f/k/a ACTAVIS PLC,;
WATSON PHARMACEUTICALS, INC.
n/k/a ACTAVIS, INC.; WATSON
LABORATORIES, INC.; ACTAVIS, LLC;
ACTAVIS PHARMA, INC. f/k/a
WATSON PHARMA, INC.; PAR
PHARMACEUTICAL, INC.; PAR
PHARMACEUTICALS COMPANIES,
INC.; ANDA,INC.; CVS HEALTH
CORPORATION; RITE AID OF
MARYLAND, INC., DBA RITE AID MID-
ATLANTIC CUSTOMER SUPPORT
CENTER, INC.; RITE AID
CORPORATION; WAL-MART INC.;
AMNEAL PHARMACEUTICALS, LLC;
ECKERD CORPORATION; VALUE

C.A. No. _____

(Removal from: The Court of
Common Pleas of Delaware County)

DRUG COMPANY; KVK-TECH, INC.;
AMERISOURCEBERGEN DRUG
CORPORATION,; HD SMITH
WHOLESALE DRUG COMPANY;
WALGREENS BOOTS ALLIANCE, INC.;
WALGREEN EASTERN CO.; AND
WALGREEN, CO.,

Defendants.

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446, and 1453 with full reservations of defenses, including its objection to personal jurisdiction, Defendant CVS Health Corporation ("CVS") gives notice of the removal of this action originally filed in the Court of Common Pleas of Bucks County, Pennsylvania and now pending in the coordinated proceedings located in the Court of Common Pleas of Delaware County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. In support of removal, CVS provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basis Operating Co., LLC* v. *Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

7618795 1

## I.            NATURE OF THE REMOVED ACTION.

1.      The complaint in this case is substantively identical to *Bedford County* v. *Purdue Pharma L.P., et al.,* Case No. 2:20-cv-01385-JS (E.D. Pa. 2020) and *Adams County* v. *Purdue*, Case No. 2:19-cv-04438 (E.D. Pa. 2019),[1] which were removed by CVS and transferred by the Judicial Panel on Multidistrict Litigation to the Opiate MDL. JPML Dkt. No. 7035, 7713.

2.      On December 17, 2020, Plaintiff Middletown Township, Pennsylvania ("Plaintiff") borrowed the Adams County and Bedford County complaints and filed a complaint under its own name in the Court of Common Pleas of Bucks County, Civil Division, for claims relating to prescription opioid medications. Plaintiff alleges claims against two defendant groups ("Defendants"): Manufacturer Defendants and Distributor Defendants. As a subset of the Distributor Defendants, Plaintiff notes that Defendants CVS, Rite Aid, Walmart,[2] and Walgreens shall be referred to as

---

[1] The allegations are also substantively similar to four other cases CVS recently removed to this Court. *E.g., Asbestos Workers Local Union No. 2 Welfare Fund* v. *Allergan, PLC, et al.*, Case No. 2:20-cv-05191 (E.D. Pa. 2020), *Laborers' District Council Building and Construction Health and Welfare Fund* v. *Purdue Pharma L.P.,* Case No. 2:20-cv-04804-JS (E.D. Pa. 2020), *Sheet Metal Workers Local 19 Health Fund* v. *Purdue Pharma L.P.,* Case No. 2:20-cv-04805-JS (E.D. Pa. 2020), *District Attorney of Clearfield County* v. *Purdue Pharma L.P.,* Case No. 2:20-cv-05171-JS (E.D. Pa. 2020). On February 5, 2021, these cases were transferred to the Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL"). JPML Dkt. No. 9020.

[2] Plaintiff named Wal-Mart Inc. as a defendant to this action. As of February 1, 2018, Wal-Mart Stores, Inc. became known as Walmart Inc.

7618795 1

"National Retail Pharmacies."[3]

3.     Plaintiff brings claims related to prescription opioid medications, including claims for (1) consumer fraud and deceptive practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (2) public nuisance; (3) negligence; (4) unjust enrichment; (5) common law fraud; (6) civil conspiracy for deceptive marketing; and (7) civil conspiracy for unlawful distribution practices. Plaintiff seeks damages and equitable relief for alleged injuries to the residents of Middletown Township.

4.     This action is one of approximately 3,000 opioid lawsuits filed by government entities and other plaintiffs against manufacturers, distributors, and retailers of prescription opioid medications. Plaintiff alleges that Defendants are liable for the economic and non-economic injuries suffered by Plaintiff and its residents, including physicians treating residents and employees, and opioid-addicted individuals.

5.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation created a Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL") for cases just like this one—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively

---

[3] *See* Complaint ¶ 105 ("Cardinal, McKesson, Rochester Drug Co-Operative, Anda, Value Drug Company, H.D. Smith, Amerisource Bergen and the National Retail Pharmacies are collectively referred to as the 'Distributor Defendants.'").

7618795 1

marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order) (attached hereto as **Exhibit 1**). To date, over 2,000 actions have been transferred to the Opiate MDL.

6.     Plaintiff's 224-page Complaint resembles virtually all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present. In fact, the allegations against the manufacturers and distributors here are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case currently being litigated in the Opiate MDL.

7.     In addition, Plaintiff's Complaint is nearly identical to the Complaint filed by the same Plaintiff's counsel and removed to this Court by Defendant Walgreens on December 31, 2018. *County of Carbon* v. *Purdue Pharma L.P.*, No. 2:18-cv-05625, E.D. Pa. Dkt. No. 1 (E.D. Pa., Dec. 31, 2018). On March 12, 2019, Chief Judge Juan R. Sanchez stayed proceedings pending decision on transfer by the JPML. In doing so, Chief Judge Sanchez recognized that "a stay would promote judicial economy by conserving the parties' resources, avoiding duplicative litigation, and preventing inconsistent rulings." *See id.*, E.D. Pa. Dkt. No. 51. (Walgreens later consented to remand of the Carbon County action while that action was pending in

7618795 1

the Opiate MDL. But nothing about that remand affects the removability of this action or changes the analysis of whether similar actions should also be transferred to the Opiate MDL.)

8.     The gravamen of Plaintiff's Complaint is that certain so-called Manufacturer Defendants made various "misrepresentations" regarding the safety and efficacy of opioids that were subsequently distributed "though various channels, including through advertising, sales representatives, [and] purportedly independent organizations," in order to "convince physicians, patients, and the public at large of the truth of each of these propositions . . . [and] to expand the market for their opioids." Complaint ¶¶ 169-71.

9.     Plaintiff also alleges that certain Distributor Defendants "distributed, supplied, sold, and placed into the stream of commerce the prescription opioids, without fulfilling the fundamental duty of wholesale drug distributors to detect and warn of diversion of dangerous drugs for non-medical purposes." Complaint ¶ 73. According to Plaintiff, Distributor Defendants "universally failed to comply with federal and/or state law," which, Plaintiff alleges, "is a substantial cause for the excessive volume of prescription opioids plaguing Plaintiff's Community and of the diversion of prescription opioids into Plaintiff's Community." *Id.*

10.     Based on these allegations, Plaintiff claims a litany of injuries to its residents stemming from the alleged abuse of addictive opioids by residents in Middletown Township. These include alleged damages in the form of expenses expended for medical insurance claims for opioids that were not medically necessary,

as well as increased costs of social services, emergency services, health systems, law enforcement, and treatment facilities. *E.g.,* Complaint ¶ 754.

## II.    BASIS OF REMOVAL

### A. FEDERAL QUESTION

11.    Removal is proper under 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a substantial federal question under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, *et seq.*).

12.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

13.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

14.    Even when state law creates the causes of action, a petition may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd.* v. *Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see also Wullschleger* v. *Royal Canin US.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) ("Plaintiffs' dependence on federal law permeates the allegations such that the [state law] antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law."); *Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case

7

within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[4]

15.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between

---

[4] CVS need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior holdings in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100 (1941), and its antecedents that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims* v. *Arrow Financial Services, LLC* held: "'Divestment of district court jurisdiction' should be found 'no more readily than 'divestment of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331.'" 565 U.S. 368, 379 (2012) (alterations omitted) (quoting *ErieNet, Inc.* v. *Velocity Net, Inc.*, 156 F.3d 513, 523 (3d Cir. 1998) (Alito, J., dissenting)).

7618795 1

state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

16.     When a purported state law claim is premised on violations of duty contained in a federal statute, a federal court has jurisdiction over that claim. *See Bd. of Comm'rs of Se. La. Flood Protection Authority-East* v. *Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on the failure to satisfy a standard of care established in federal statute). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723. A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question. *Id.*; *see also Hughes* v. *Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (plaintiff's state law claims gave rise to federal question jurisdiction because resolution of claims relied on duty contained in federal law).

17.     As set forth below, Plaintiff's tort claims meet all four requirements.

18.     Although Plaintiff ostensibly pleads some of its theories of recovery against CVS as state law claims, it bases the underlying theory of liability on CVS's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA.[5]

---

[5] Plaintiff relies on the Pennsylvania Controlled Substance, Drug, Device, and Cosmetic Act ("PCSA"), 35 P.S. § 780, *et seq*. Complaint ¶ 469. But this statute does not establish a

19.    For instance, Plaintiff pleads that CVS and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.  Distributor Defendants were "required to register with the DEA to . . . distribute Schedule II controlled substances. *See* 21 U.S.C. § 823(a)-(b) . . . . These Defendants were further required to take steps to halt suspicious orders. These Defendants violated their obligations under federal law." Complaint ¶ 468.

b.  "Distributor Defendants . . . failed to monitor for, report, and prevent suspicious orders of opioids as required by federal and state law." *Id.* at ¶ 836.

c.  "The Defendants also had reciprocal obligations under the [federal] CSA to report suspicious orders of other parties if they became aware of them." *Id.* at ¶ 518.

d.  "Under the [federal] CSA, pharmacy registrants are required to 'provide effective controls and procedures to guard against theft and diversion of controlled substances.'" *Id.* at ¶ 584 (quoting 21 C.F.R. § 1301.11).

---

duty to report or halt suspicious orders. For example, Plaintiff cites 35 P.S. § 780-112(c) for the proposition that the PCSA "require[s] the Distributor Defendants to 'design and operate a system to disclose . . . suspicious orders of controlled substances . . . Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.' 35 P.S. § 780-112(c) (incorporating 21 C.F.R. § 1301.74(b))." *Id.* at ¶ 478. But 35 P.S. § 780-112(c) does not contain the above-quoted language. It merely requires persons registered under the PCSA to "keep records and maintain inventories in conformity with the record-keeping, order form and inventory requirements of Federal law and with any additional regulations the secretary issues." 35 P.S. § 780-112(c). And even if it did, such language would only bolster CVS's argument that suspicious order reporting duties stem from federal law, not state law.

Plaintiff further claims that, under the PCSA and the Pennsylvania Wholesale Prescription Drug Distributors License Act ("WPDDLA"), 63 P.S. § 391, *et seq.*, the "Distributor Defendants are required to establish effective controls against suspicious orders to prevent prescription drugs from being diverted into the community, including . . . [r]eporting suspicious orders of controlled substances, including prescription opioids, to alert regulatory and law enforcement officials when it appears that prescription drugs are being diverted for illegal use." Complaint ¶ 473. But again, neither statute requires the reporting of "suspicious orders."

10

e. "Because pharmacies themselves are registrants under the [federal] CSA, the duty to prevent diversion lies with the pharmacy entity, not the individual pharmacist alone." *Id.*

f. "Defendants have several responsibilities under state and federal law with respect to control of the supply chain of opioids. First, they must set up a system to prevent diversion, including excessive volume and other suspicious orders. . . . Further, they must also stop shipment of any order which is flagged as suspicious . . . ." *Id.* at ¶ 480.

g. "Despite their legal obligations as registrants under the [federal] CSA, the National Retail Pharmacies allowed widespread diversion to occur—and they did so knowingly." *Id.* at ¶ 591.

h. "Defendants continued to pump massive quantities of opioids despite their obligations to control the supply, prevent diversion, report and take steps to halt suspicious orders." *Id.* at ¶ 570.

i. "The National Retail Pharmacies failed to take meaningful action to stop this diversion despite their knowledge of it and contributed substantially to the diversion problem." *Id.* at ¶ 581.

j. "Defendants had a duty not to breach the standard of care established under Pennsylvania law and the federal [CSA] and its implementing regulations to report suspicious prescribing and to maintain systems to detect and report such activity." *Id.* at ¶ 762.

20.    The source of the asserted legal duties to prevent diversion and to monitor, investigate, and report suspicious orders of controlled substances is the CSA and its implementing regulations. *See* 21 U.S.C. § 823(b), (e); *id.* § 832; *id.* § 842(c)(1)(B); 21 C.F.R. §§ 1301.71, .74(b).

21.    The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. The DEA interprets the public interest factors for registering distributors under the CSA, 21

11

U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc.* v. *DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

22.     Plaintiff's theories of liability against CVS and the other Defendants, as pleaded in the Complaint, are thus predicated on allegations that Defendants breached alleged duties under the CSA to implement effective controls against diversion and to detect and report "suspicious" orders for prescription opioids.

23.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

24.     ***First***, Plaintiff's state law claims "necessarily raise" a federal question. That is because Plaintiff's asserted right to relief under state law necessarily requires resolution of a federal question. *Virgin Islands Hous. Auth.* v. *Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added); *Tenn. Gas Pipeline Co.*, 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's

12

7618795 1

interpretation of the scope of a duty of care contained in federal law); *Hughes*, 478 F. App'x at 170-71; *see also North Carolina ex rel. N.C. Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc.* v. *UBS Sec. LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (a duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question).

25.    Plaintiff's claims against CVS and the other Distributor Defendants require Plaintiff to establish that Defendants breached duties established exclusively under federal law by failing to monitor, investigate, and report shipments of otherwise lawful orders of controlled substances or by otherwise failing to maintain controls against diversion.

26.    The Complaint entirely fails to cite any Pennsylvania statutory or regulatory provision imposing a duty on dispensers of prescription medications to "monitor prescription orders," in the dispensing of prescription opioids. This is because, as explained above, these duties necessarily arise under the federal CSA and regulations.

27.    While Plaintiff is the master of its petition, and it "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc.* v. *Williams*, 482 U.S.

7618795 1

386, 392 (1987) (emphasis added), Plaintiff here relies on violations of federal law as the basis for its state-law claims.[6] And Plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Cahall* v. *Westinghouse Elec. Corp.*, 644 F. Supp. 806, 809 (E.D. Pa. 1986).

28.    In sum, despite Plaintiff's attempt to disguise the federal question, the Complaint necessarily raises a federal issue: whether the Distributor Defendants violated the CSA.

29.    **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether the Distributor Defendants violated any duties arising under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

30.    **Third**, the federal issue presented by Plaintiff's claims is "substantial."[7] "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to

---

[6] Furthermore, it is not necessary for federal jurisdiction that CVS establish that *all* of Plaintiff's counts raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l Coll. Of Surgeons*, 522 U.S. 156, 166 (1997). Because the Court has original jurisdiction over at least some counts against Defendant, it has supplemental jurisdiction over Plaintiff's remaining counts against Defendant, and other Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

[7] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiff's claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

7618795 1

the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260-61 (first quoting *Grable*, 545 U.S. at 315; then quoting *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

31.     Plaintiff's theories of liability necessarily require that a court determine a question relating to the important federal issue of regulation of controlled substances. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

32.     The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of

such traffic." 21 U.S.C. § 801. Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable.*" *Anversa* v. *Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

33.    Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and  convert[] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g., Ranck* v. *Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4-5 (D. Or., May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under the Act).

34.    Removal is especially appropriate here because Plaintiff's action is one of thousands of similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff claims that both the "opioid epidemic" and Defendants' alleged misconduct occurred on a national scale. *E.g,* Complaint ¶¶ 16, 70, 81, 578. And Plaintiff relies on enforcement actions and settlements in jurisdictions outside of Pennsylvania to establish wrongful conduct. *E.g., id.* ¶¶ 232, 489, 613-17.

35.    **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA— applies them. Federal jurisdiction is therefore properly exercised under § 1331 to resolve "disputed issues of federal law" under the CSA.

36.    In sum, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Tenn. Gas Pipeline Co.*, 850 F.3d at 722-23; *Hughes*, 478 F. App'x at 170-71; *Gilmore* v. *Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Nicodemus* v. *Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006)).

37.    To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of

supplemental jurisdiction. 28 U.S.C. § 1367(a).

### B.  THIS ACTION IS REMOVABLE UNDER CAFA

38.    Plaintiff's lawsuit is also removable under CAFA because: (i) litigation of this case in federal court promotes CAFA's overall purpose; (ii) the lawsuit essentially is a class action suit; and (iii) each of CAFA's statutory requirements is satisfied. Jurisdiction under CAFA is measured at the time of removal. 28 U.S.C. § 1332(d); *Anthony* v. *Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 512 (E.D. Pa. 2007).

### A.    This is an Interstate Case of National Importance.

39.    First, this lawsuit is the type of case that Congress intended to be litigated in federal court when it enacted CAFA. Congress's overall purpose in enacting CAFA was "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see Dart Cherokee Basin Operating Co.* v. *Owens*, 135 S. Ct. 547, 554 (2014) ("CAFA's primary objective is to ensur[e] Federal court consideration of interstate cases of national importance") (citations and quotations omitted); *Kaufman* v. *Allstate N.J. Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009).

40.    This case is one of over a thousand cases filed across the country in which government entities have sued opioid prescription manufacturers, distributors, and others for harms arising from the abuse of these drugs. The Opiate MDL alone has more than 2,900 individual cases that have become part of a

18

national narrative involving opioid misuse and diversion in Pennsylvania and across the country. Plaintiff has scripted its Complaint from complaints in cases that already are being litigated in the Opiate MDL. For example, Plaintiff asserts that its claims touch upon issues of national importance, as well as duties under federal law. *See, e.g.,* Complaint ¶ 663 (citing report from the Food and Drug Administration about how opioid abuse is has been recognized "as a 'public health crisis' that has a 'profound impact on individuals, families and communities across our country'"); *id.* at ¶ 666 ("A 2016 Centers for Disease Control and Prevention study estimated the national economic impact of prescription opioid overdoses, abuse and dependence to be $78.5 billion dollars annually."); *id.* at ¶ 784 ("As a direct and proximate result of Defendants' negligent, willful, wanton, and intentional acts . . . there is now a national opioid epidemic that has caused enormous harm and injury to the public."); *id.* at ¶ 468 ("Defendants violated their obligations under federal law.").

41.     As Plaintiff avers, the issues in this case implicate factual and legal issues that span well beyond State lines, and as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL.

42.     Plaintiff, like the other plaintiffs in the Opiate MDL, has alleged that the distributor Defendants failed to make reports to the DEA. *See* Complaint ¶ 517 ("Defendants also worked together to ensure that . . . suspicious orders were not reported to the DEA . . . ."). Accordingly, litigation of these cases requires coordination with the DEA. The Honorable Judge Dan Aaron Polster of the United States District Court for the Northern District of Ohio, presiding over the Opiate MDL, has

established protocols for the DEA to provide this information.

43.    In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

**B.    This Case Essentially Is a Class Action.**

44.    Second, CAFA applies here because this case essentially is a class action. While Plaintiff has not alleged a putative class action on the face of its Complaint, and has taken pains to contend that "[t]his action is non-removable," Complaint ¶ 30, in reality, this lawsuit is a "class action in all but name," *West Virginia ex rel. McGraw* v. *Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010); *see also Freeman* v. *Blue Ridge Paper Prod., Inc.*, 551 F.3d 405, 407-08 (6th Cir. 2008) ("CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction."). In this circuit and elsewhere, courts consistently prioritize substance and function over form when characterizing the nature of a dispute or claim . . . This is particularly true in the context of "class" or "representative" proceedings. *AT&T Mobility LLC* v. *Smith*, No. 11-cv-5157, 2011 WL 5924460, at *5 (E.D. Pa., Oct. 6, 2011) ("'We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim. To do otherwise would elevate form over substance and would put a premium on artful labeling.'") (quoting *Jarbough* v. *AG of the United States*, 483 F.3d 184, 189 (3d Cir. 2007)).

45.    CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of

7618795 1

$5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. 1332(d)(2); *see Standard Fire Ins. Co.* v. *Knowles*, 133 S. Ct. 1345, 1348 (2013) (quoting 28 U.S.C § 1332(d)(2) and (d)(5)(B) and holding that jurisdiction exists under CAFA "if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000'"). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *McGraw*, 705 F. Supp. 2d at 452 (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest).

46. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332 (d)(1)(B); *see W. Va. ex rel. McGraw,* 705 F. Supp. 2d at 452. Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34. This is true even if an action does not seek class certification. 28

7618795 1

U.S.C. § 1332 (d)(1)(D) (defining "class members" for purposes of CAFA as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action"). Courts construe complaints generously in favor of jurisdiction and should not employ any presumption against removability. *See Dart Cherokee*, 135 S. Ct. at 550 ("[N]o antiremoval presumption attends cases invoking CAFA, a statute Congress enacted to facilitate adjudication of certain class actions in federal court.").

47.    Here, Middletown Township purports to bring claims of its employees and residents "as subrogee of its employees and residents." Complaint ¶ 33. But townships cannot assert subrogation claims on behalf of residents. Rather, Plaintiff's contention confirms that it is seeking to act as a representative for a class of residents who were allegedly harmed, either directly or indirectly, by the Defendants' purported misbranding of opioid drugs or other misconduct.

48.    Plaintiff's Pennsylvania Unfair Trade Practices and Consumer Protection Law claim (first cause of action) is a prime example of the Plaintiff's representative status. Plaintiff's Consumer Protection Law claim arises from the Manufacturer and Distributor Defendants' transactions with residents of Middletown Township. *See, e.g.,* Complaint ¶ 748 ("All of this conduct, separately and collectively, was intended to deceive Pennsylvania consumers who used and paid for opioids for chronic pain . . . ."); *id.* at ¶ 743 ("Manufacturer Defendants . . . violated the UTPCPL by making and disseminating untrue, false, and misleading statements . . . to Pennsylvania and Township prescribers and consumers . . . .").

49.    Elsewhere, Plaintiff emphasizes that Defendants have inflicted both

22

economic and non-economic injuries on its residents. *See, e.g.,* Complaint ¶ 172 ("Each Manufacturer Defendant's conduct, and each misrepresentation, contributed to an overall narrative that aimed to—and did—mislead doctors, patients, and payors about the risks and benefits of opioids."); *id.* at ¶ 427 ("The Manufacturer Defendants created a body of false, misleading, and unsupported medical and popular literature about opioids that . . . was likely to shape the perceptions of prescribers, patients, and payors."); *id.* at ¶ 676 (Manufacturer Defendants' false propositions were designed to "mislead physicians, patients, health care providers, and health care payors"); *id.* at ¶ 748 (Manufacturer Defendants' conduct was "intended to deceive Pennsylvania consumers who used or paid for opioids for chronic pain; Pennsylvania physicians who prescribed opioids to consumers to treat chronic pain; and Pennsylvania payors, including the Township, who purchased, or covered the purchase of, opioids for chronic pain"); *id.* at ¶ 753 (Defendants have "engaged in conduct or omissions which unreasonably interferes with the public health, safety, peace, comfort, convenience, or quality of life").

50.    Plaintiff's alleged injuries derive only as a result of its residents' alleged injuries and thus cannot be separated from the injuries that it alleges its residents have incurred. Plaintiff seeks to recover costs in providing law enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, Complaint ¶ 782, all of which stem ***only*** from its residents' opioid abuse and addiction.

51.    Plaintiff's Complaint also satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents. *See* 28 U.S.C. §

1332(d)(5)(B); *see also* Complaint at ¶¶ 32-33 (alleging that Plaintiff has 32,559 residents and that Plaintiff asserts the action as subrogee of its employees and residents). Thus, the potential number of people who have been or may be affected well exceeds the 100-member requirement under CAFA.

### C.  Minimal diversity exists between Plaintiffs and Defendants under CAFA.

52.    There is minimal diversity between Plaintiff and Defendants. District courts have original jurisdiction under CAFA of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA thus eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity—meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

53.    For purposes of diversity jurisdiction, a political subdivision is a citizen of the State. *See Moor* v. *Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability companies, also is determined by the entity's State of incorporation and principal

24

place of business. 28 U.S.C. § 1332(d)(10).

54.     Applying these principles, there is minimal diversity between the parties. Plaintiff is a political subdivision of Pennsylvania, and the putative class members are also residents of Pennsylvania. And many of the Defendants are citizens of States other than Pennsylvania. For example:

    a.  Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Jersey. Accordingly, it is a New Jersey citizen.

    b.  Defendant Watson Laboratories, Inc. is a Nevada corporation with its headquarters in Parsippany, New Jersey. Accordingly, it is a citizen on Nevada and New Jersey.

    c.  Defendant Cardinal Health Inc. is an Ohio Corporation with its headquarters in Ohio. Accordingly, it is a citizen of Ohio.

55.     Because there is diversity of citizenship between Plaintiff and at least one Defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

**D.    The Amount in Controversy Exceeds the Jurisdictional Limit.**

56.     The amount in controversy exceeds CAFA's jurisdictional threshold. Although Plaintiff alleges no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. In ascertaining the amount in controversy, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

57.     Here, Plaintiff alleges a number of different injuries from opioid abuse

and addiction. Plaintiff alleges that opioid abuse has impacted a substantial portion of its residents at least since 2006, but potentially as far back as the late 1990s. *E.g.,* Complaint ¶¶ 3-4, 32. Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[8]

## III.                ALL PROCEDURAL REQUIREMENTS ARE MET.

58.    CVS has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446.

59.    CVS is filing this Notice of Removal pursuant to 28 U.S.C. § 1441(a) in the United States District Court for the Eastern District of Pennsylvania, because the State court in which the action is pending, the Court of Common Pleas for Delaware County, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

60.    CVS has not yet been served in this action; therefore this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

61.    In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, orders, and other documents then on file in the State Court," are attached as **Exhibit 2**.

---

[8] The amount in controversy represents only what Plaintiff requests at this stage of the proceeding. This is not an admission that Plaintiff is entitled to recover this amount. *See Hartis* v. *Chi. Title Ins. Co.*, 694 F.3d 935, 945  (8th Cir. 2012) ("The removing party need not confess liability in order to show that the controversy exceeds the threshold.") (internal citations and quotes omitted).

7618795 1

62.    In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, CVS will "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Court of Common Pleas. A true and correct copy of the Notice to Plaintiff and Notice to the State Court of Filing of Notice of Removal will be filed as separate documents.

63.    Under CAFA, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants." 28 U.S.C. § 1453(b) (emphasis added).

64.    In accordance with 28 U.S.C. § 1446(b)(2)(A), and as set forth in **Exhibit 3**, all defendants that are not subject to a bankruptcy stay or injunction and that have been properly joined and served[9] in this action join in or consent to this removal on the basis of federal question jurisdiction.

65.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment CVS's or any other defendants' right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction.[10] If there are any questions that arise as to the propriety of removal of this action, CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal of this case.

---

[9] Many of the defendants listed in Exhibit 3 have not been properly served or properly joined, but they nevertheless consent to the removal in an abundance of caution.

[10] CVS also does not concede that it is the properly named CVS entity.

7618795 1

Dated:        February 10, 2021          Respectfully submitted,


 */s/ Mark D. Villanueva*
Mark D. Villanueva (Atty I.D. No. 89892)
STRADLEY RONON
STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
T: (215) 564-8000
E: mvillanueva@stradley.com

 – and –

Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
T: (410) 949-1160
E: cocroinin@zuckerman.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for CVS Health Corporation*

28

## <u>CERTIFICATE OF SERVICE</u>

I, Mark D. Villanueva, hereby certify that the foregoing Notice of Removal was filed with the Court's electronic filing system, and a true and correct copy was served on counsel via electronic mail.

Dated: February 10, 2021                    Respectfully submitted,


                                             */s/ Mark D. Villanueva*
                                             Mark D. Villanueva